| PROB 22 (Rev. 2/88) | DOCKET NUMBER *(Tran. Court)* |
|---|---|
| **TRANSFER OF JURISDICTION** RECEIVED 2006 OCT 16 A 9: 23 | 99-136-003-A |

TRANSFER OF JURISDICTION

| NAME AND ADDRESS OF PROBATIONER/SUPERVISED RELEASEE | DISTRICT MIDDLE DISTRICT OF LOUISIANA | DIVISION |
|---|---|---|

DOCKET NUMBER *(Rec. Court)*
CRMISC.No. 1101/06CR240-A

MICHAEL JOSEPH MARLOWE, JR.

539 HIGHWAY 165

EUFAULA, AL 36027

NAME OF SENTENCING JUDGE

JOHN V. PARKER, UNITED STATES DISTRICT JUDGE

| DATES OF PROBATION/SUPERVISED RELEASE: | FROM 2/25/2005 | TO 2/24/2009 |
|---|---|---|

OFFENSE

CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCES

**PART 1 - ORDER TRANSFERRING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA

   IT IS HEREBY ORDERED that pursuant to 18 U.S.C. 3605 the jurisdiction of the probationer or supervised releasee named above be transferred with the records of the Court to the United States District Court for the MIDDLE DISTRICT OF ALABAMA upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this court.*

August 28, 2006
*Date*

John V. Parker
*United States District Judge*

*This sentence may be deleted in the discretion of the transferring Court.

**PART 2 - ORDER ACCEPTING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA

   IT IS HEREBY ORDERED that jurisdiction over the above-named probationer/supervised releasee be accepted and assumed by this Court from and after the entry of this order.

9/14/06
*Effective Date*

A TRUE COPY

*United States District Judge*

Nicole Deups 10/13/06
*Deputy Clerk*          *Date*
U.S. District Court
Middle District of Louisiana
Baton Rouge, Louisiana

APPEAL, CLOSED

# U.S. District Court
## Middle District of Louisiana (Baton Rouge)
### CRIMINAL DOCKET FOR CASE #: 3:99-cr-00136-JVP-4

Case title: USA v. Cherry, et al

Date Filed: 09/01/1999

A TRUE COPY
Nicole' Joups  10/13/06
Deputy Clerk                         Date
U. S. District Court
Middle District of Louisiana
Baton Rouge, Louisiana

## Defendant

**Michael Joseph Marlowe** (4)
*TERMINATED: 04/28/2000*
*also known as*
Micky Marlowe

represented by **Jean M. Faria**
Federal Public Defenders Office
for Middle & Western District
707 Florida Street
Suite 303
Baton Rouge, LA 70801
225-382-2118
Fax: 225-382-2119
Email: jean_faria@fd.org
*TERMINATED: 09/30/1999*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: *Federal Public Defender Appointed*

**Robert James Hildum**
Manasseh, Gill & Joubert, P.L.C.
900 North Boulevard
Baton Rouge, LA 70802
225-336-0056
*TERMINATED: 04/28/2000*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: *CJA Appointment*

## Pending Counts

21:846=CD.F CONSPIRACY TO
DISTRIBUTE CONTROLLED
SUBSTANCE
(1)

21:843B=CD.F USE
COMMUNICATIONS FACILITY -
CONTROLLED SUBSTANCE -

## Disposition

...imprisonment of 70
months...supervised release of 4
years...assessment of $100.00...fine of
$5,000.00

dismissed on motion of the United
States

DISTR.
(7)

21:843B=CD.F USE
COMMUNICATIONS FACILITY -
CONTROLLED SUBSTANCE -
DISTR.
(19-20)

dismissed on motion of the United
States

21:843B=CD.F USE
COMMUNICATIONS FACILITY -
CONTROLLED SUBSTANCE -
DISTR.
(22)

dismissed on motion of the United
States

18:1952-7400.F RACKETEERING -
TRANSPORTING IN AID OF
(28)

dismissed on motion of the United
States

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

**Interested Party**

**Philip S Greene**     represented by  **Philip S Greene**
2317 Stanford
Houston, TX 77006
(713)523-5524
PRO SE

**Plaintiff**

**United States of America**     represented by  **Rene Irvin Salomon**
United States Attorney's Office - BR
Middle District of Louisiana
777 Florida Street, Suite 208

Baton Rouge, LA 70801
225-389-0443
Fax: 225-389-0561
Email: USALAM.ECF@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/18/1988 | | Arrest WARRANT issued as to Charles Melvin Griffin Jr, Owen Daniel Foster, Michael Joseph Marlowe, William Randal Emerson (bnw) (Entered: 09/20/1999) |
| 08/31/1999 | | ARREST of Michael Joseph Marlowe in Middle District of Alabama (bnw) (Entered: 09/21/1999) |
| 09/01/1999 | 1 | INDICTMENT as to Joyce Tina Cherry (1) count(s) 1, 2, 3-6, 9-13, 16-18, 23-24, 26, 34-35, Charles Melvin Griffin (2) count(s) 1, 10, 14, 21, 26-27, 29, 31-33, Owen Daniel Foster (3) count(s) 1, 8, 15, 22, 27, Michael Joseph Marlowe (4) count(s) 1, 7, 19-20, 22, 28, William Randal Emerson (5) count(s) 1, 25, 29-30 (bnw) (Entered: 09/20/1999) |
| 09/01/1999 | | Set magistrate assignment. (bnw) (Entered: 09/20/1999) |
| 09/02/1999 | 5 | NOTICE of Hearing as to Michael Joseph Marlowe :, set Initial Appearance for 2:00 9/15/99 before CN for Michael Joseph Marlowe , set Arraignment for 2:00 9/15/99 before CN for Michael Joseph Marlowe (bnw) (Entered: 09/20/1999) |
| 09/08/1999 | 11 | Arrest WARRANT Returned Executed as to Michael Joseph Marlowe on 8/31/99 (bnw) (Entered: 09/20/1999) |
| 09/13/1999 | 24 | Rule 40 Documents as to Michael Joseph Marlowe received from Middle District of Alabama (bnw) (Entered: 09/24/1999) |
| 09/16/1999 | 19 | MOTION by USA as to Joyce Tina Cherry, Charles Melvin Griffin Jr, Owen Daniel Foster, Michael Joseph Marlowe, William Randal Emerson to Unseal Documents (bnw) (Entered: 09/21/1999) |
| 09/17/1999 | 20 | ORDER as to Joyce Tina Cherry, Charles Melvin Griffin Jr, Owen Daniel Foster, Michael Joseph Marlowe, William Randal Emerson granting [19-1] motion to Unseal Documents as to Joyce Tina Cherry (1), Charles Melvin Griffin (2), Owen Daniel Foster (3), Michael Joseph Marlowe (4), William Randal Emerson (5) ( Signed by Chief Judge Frank J. Polozola ) (bnw) (Entered: 09/21/1999) |
| 09/27/1999 | 26 | NOTICE of Hearing as to Michael Joseph Marlowe :, set Initial Appearance for 10:00 9/28/99 before CN for Michael Joseph Marlowe , set Arraignment for 10:00 9/28/99 before CN for Michael Joseph Marlowe (bnw) (Entered: 09/27/1999) |

| 09/28/1999 | | Initial appearance as to Michael Joseph Marlowe held (Defendant informed of rights.) (bnw) (Entered: 09/28/1999) |
|---|---|---|
| 09/28/1999 | 27 | Minute entry as to Michael Joseph Marlowe : 5A held 9/28/99 ...Court...refers this matter to the FPD for representation or representation by a panel attorney... the govt moves for detention...govt moves to continue the detention hearing... dft requests a continuance...Court grants the dft's motion to continue...dft waives formal reading of the indictment ...dft remanded to USM... ( signed by Mag. Judge Christine Noland ) (bnw) (Entered: 09/28/1999) |
| 09/28/1999 | 28 | ORDER as to Michael Joseph Marlowe, Appointing Federal Public Defender or for the purpose of recommending cnsl for appointment from the CJA panel ( Signed by Mag. Judge Christine Noland ) (bnw) (Entered: 09/28/1999) |
| 09/29/1999 | 29 | ORDER recusing Chief Judge Frank J. Polozola...as to Joyce Tina Cherry, Charles Melvin Griffin Jr, Owen Daniel Foster, Michael Joseph Marlowe, William Randal Emerson ( Signed by Chief Judge Frank J. Polozola ) (bnw) (Entered: 09/29/1999) |
| 09/29/1999 | 30 | ORDER as to Michael Joseph Marlowe, set Detention Hearing for 10:30 10/4/99 before CN in Courtroom 6 for Michael Joseph Marlowe ( Signed by Mag. Judge Christine Noland ) (bnw) (Entered: 09/29/1999) |
| 09/29/1999 | | CASE reassigned to Judge John V. Parker (bnw) (Entered: 09/29/1999) |
| 10/04/1999 | | Detention hearing as to Michael Joseph Marlowe held (bnw) (Entered: 10/05/1999) |
| 10/04/1999 | | Arraignment as to Michael Joseph Marlowe held (bnw) (Entered: 10/05/1999) |
| 10/04/1999 | | PLEA of Not Guilty: Michael Joseph Marlowe (4) count(s) 1, 7, 19-20, 22, 28 ; Court accepts plea. (bnw) (Entered: 10/05/1999) |
| 10/05/1999 | 36 | Minute entry as to Michael Joseph Marlowe : Dentention hearing and arraingment held 10/4/99...dft entered plea of NOT GUILTY to counts 1,7,19,20,22, and 28 of the indictment ...Court accepted the dft's pleas of not guilty... , set Status Conference for 11:00 10/18/99 before CN for Michael Joseph Marlowe ...the govt moved for detention of the dft ...dft presented argument...the Court ordered the dft detained pending trial...dft remanded to USM ( signed by Mag. Judge Christine Noland ) (bnw) (Entered: 10/05/1999) |
| 10/05/1999 | 37 | ORDER setting discovery deadlines as to Michael Joseph Marlowe, set Substantive Motion Filing deadline to 10/24/99 for Michael Joseph Marlowe ( Signed Mag. Judge Christine Noland ) (bnw) (Entered: 10/05/1999) |
| 10/05/1999 | 38 | ORDER OF DETENTION PENDING TRIAL as to Michael Joseph Marlowe ( Signed by Mag. Judge Christine Noland ) (bnw) (Entered: |

| | | |
|---|---|---|
| | | 10/05/1999) |
| 10/06/1999 | 39 | ORDER as to Joyce Tina Cherry, Charles Melvin Griffin Jr, Owen Daniel Foster, Michael Joseph Marlowe, William Randal Emerson...STATUS CONFERENCE is hereby set in this matter for 10/8/99 at 2:00 p.m. before JVP ( Signed by Judge John V. Parker ) (bnw) (Entered: 10/06/1999) |
| 10/08/1999 | 43 | CJA 20 as to Michael Joseph Marlowe : Appointment of Attorney Robert J. Hildum Voucher # 1020998 ( Signed by Mag. Judge Christine Noland ) (kdc) (Entered: 10/08/1999) |
| 10/08/1999 | 45 | ORDER as to Joyce Tina Cherry, Charles Melvin Griffin Jr, Owen Daniel Foster, Michael Joseph Marlowe, William Randal Emerson...ORDERED that discovery for all dfts shall be completed in accordance with the discovery schedule entered on 10/4/99 for dft Michael Joseph Marlowe...however, all dates are to run from 10/12/99 reset Substantive Motion Filing deadline to 11/1/99 for Joyce Tina Cherry, for Charles Melvin Griffin Jr, for Owen Daniel Foster, for Michael Joseph Marlowe, for William Randal Emerson ( Signed by Mag. Judge Christine Noland ) (bnw) (Entered: 10/08/1999) |
| 10/20/1999 | 51 | NOTICE of Return on service of Order as to Joyce Cherry served on 10/19/99 (bnw) (Entered: 10/20/1999) |
| 10/28/1999 | 56 | MOTION by USA as to Michael Joseph Marlowe to Transfer Custody of Prisoner (bnw) (Entered: 10/28/1999) |
| 10/28/1999 | 57 | ORDER as to Michael Joseph Marlowe granting [56-1] motion to Transfer Custody of Prisoner as to Michael Joseph Marlowe (4) ( Signed by Mag. Judge Christine Noland ) (bnw) (Entered: 10/28/1999) |
| 11/02/1999 | 59 | MOTION by USA as to Michael Joseph Marlowe to Transfer Custody of Prisoner (bnw) (Entered: 11/03/1999) |
| 11/02/1999 | 60 | NOTICE of Return on Service of Order, rec.doc.# 57, as to Michael Joseph Marlowe, served on 11/1/99 (bnw) (Entered: 11/03/1999) |
| 11/03/1999 | 61 | ORDER as to Michael Joseph Marlowe granting [59-1] motion to Transfer Custody of Prisoner as to Michael Joseph Marlowe (4) ( Signed by Mag. Judge Christine Noland ) (bnw) (Entered: 11/03/1999) |
| 11/15/1999 | 62 | NOTICE of Return on Service of Order to Transfer Custody of Prisoner as to Michael Joseph Marlowe, served on 11/12/99 (bnw) (Entered: 11/16/1999) |
| 12/06/1999 | 65 | NOTICE of Hearing as to Joyce Tina Cherry, Charles Melvin Griffin Jr, Owen Daniel Foster, Michael Joseph Marlowe, William Randal Emerson :, set Status Conference for 11:00 12/8/99 for Joyce Tina Cherry, for Charles Melvin Griffin Jr, for Owen Daniel Foster, for Michael Joseph Marlowe, for William Randal Emerson before JVP (kdc) (Entered: 12/06/1999) |

| 12/08/1999 | | Status conference as to Joyce Tina Cherry, Charles Melvin Griffin Jr, Owen Daniel Foster, Michael Joseph Marlowe, William Randal Emerson held (bnw) (Entered: 12/09/1999) |
|---|---|---|
| 12/09/1999 | 66 | NOTICE TO COUNSEL...as to Joyce Tina Cherry, Charles Melvin Griffin Jr, Owen Daniel Foster, Michael Joseph Marlowe, William Randal Emerson, set Jury Trial for 9:00 1/31/00 before JVP for Joyce Tina Cherry, for Charles Melvin Griffin Jr, for Owen Daniel Foster, for Michael Joseph Marlowe, for William Randal Emerson ...Requested jury charges, special voir dire, and pretrial briefs (if desired) shall be filed by 1/24/00. All parties who work out guilty pleas shall do so by 1/10/00. Guilty pleas may be entered on 1/10/00 at 9:00 a.m. set Plea Agreement deadline to 1/10/00 for Tina Cherry, for Charles Melvin Griffin Jr, for Owen Daniel Foster, for Michael Joseph Marlowe, for William Randal Emerson ( Signed by Judge John V. Parker ) (bnw) (Entered: 12/09/1999) |
| 01/05/2000 | 69 | NOTICE of Return Unexecuted, Order Cancelled re: Order, rec.doc.# 68 (bnw) (Entered: 01/05/2000) |
| 01/06/2000 | 70 | ORDER as to Charles Melvin Griffin Jr, Owen Daniel Foster, Michael Joseph Marlowe, William Randal Emerson, set Re-Arraignment for 2:00 1/11/00 before JVP in Courtroom 1.. for Charles Melvin Griffin Jr, for Owen Daniel Foster, for Michael Joseph Marlowe, for William Randal Emerson ( Signed by Judge John V. Parker ) (elp) (Entered: 01/06/2000) |
| 01/11/2000 | | Arraignment as to Michael Joseph Marlowe held (bnw) (Entered: 01/14/2000) |
| 01/11/2000 | | PLEA of Guilty: Michael Joseph Marlowe (4) count(s) 1 ; Court accepts plea. (bnw) (Entered: 01/14/2000) |
| 01/11/2000 | 81 | Plea Agreement as to Michael Joseph Marlowe (elp) (Entered: 01/21/2000) |
| 01/14/2000 | 73 | Minute entry as to Michael Joseph Marlowe : Arraignment held 1/11/00...plea agreement is read and filed into the record...dft enters plea of GUILTY to Count 1...plea agreement is neither accepted or rejected at this time... court accepts guilty plea and refers this matter to the probation dept for a presentence report...dft is released on conditions of his previous bond... ( signed by Judge John V. Parker ) (bnw) (Entered: 01/14/2000) |
| 02/09/2000 | 83 | NOTICE of Return on Service of Order, rec.doc.# 77, served on 2/7/00 (bnw) (Entered: 02/09/2000) |
| 02/29/2000 | 86 | NOTICE of Presentence Report Disclosure by USA as to Michael Joseph Marlowe (elp) (Entered: 02/29/2000) |
| 02/29/2000 | 91 | NOTICE of Hearing as to Michael Joseph Marlowe :, set Sentencing for 9:00 4/7/00 before JVP for Michael Joseph Marlowe (elp) (Entered: 02/29/2000) |

| | | |
|---|---|---|
| 03/07/2000 | 92 | AMENDED NOTICE of Hearing as to Charles Melvin Griffin Jr, Owen Daniel Foster, Michael Joseph Marlowe, William Randal Emerson : set Sentencing for 9:00 4/14/00 before JVP for Charles Melvin Griffin Jr, for Owen Daniel Foster, for Michael Joseph Marlowe, for William Randal Emerson (bnw) (Entered: 03/07/2000) |
| 04/11/2000 | 96 | SEALED DOCUMENT (bnw) (Entered: 04/11/2000) |
| 04/11/2000 | 97 | MOTION by USA as to Michael Joseph Marlowe SEALED MOTION (bnw) (Entered: 04/11/2000) |
| 04/11/2000 | 98 | SEALED DOCUMENT (bnw) (Entered: 04/11/2000) |
| 04/11/2000 | 100 | SEALED DOCUMENT (bnw) (Entered: 04/11/2000) |
| 04/20/2000 | | Sentencing held Michael Joseph Marlowe (4) count(s) 1 (bnw) (Entered: 05/01/2000) |
| 04/21/2000 | 116 | CONSENT JUDGMENT OF FORFEITURE as to Michael Joseph Marlowe ( Signed by Judge John V. Parker ) (bnw) (Entered: 04/28/2000) |
| 04/28/2000 | 117 | JUDGMENT Michael Joseph Marlowe (4) count(s) 1. ...imprisonment of 70 months...supervised release of 4 years...assessment of $100.00...fine of $5,000.00; Michael Joseph Marlowe (4) count(s) 7, 19-20, 22, 28...dismissed on motion of the United States ( Signed by Judge John V. Parker ) (bnw) (Entered: 05/01/2000) |
| 07/31/2000 | 142 | Judgment Returned Executed as to Michael Joseph Marlowe ; on 7/17/00 (bnw) (Entered: 07/31/2000) |
| 09/15/2000 | 143 | JUDGMENT of USCA (cert copy) as to Joyce Tina Cherry, Charles Melvin Griffin Jr, Owen Daniel Foster, Michael Joseph Marlowe, William Randal Emerson Re: [119-1] appeal Dismissing (hcj) (Entered: 09/18/2000) |
| 10/11/2000 | 145 | NOTICE of Presentence Report Disclosure (bnw) (Entered: 10/12/2000) |
| 09/25/2001 | 150 | SEALED DOCUMENT (kmk) (Entered: 09/26/2001) |
| 09/25/2001 | 151 | SEALED DOCUMENT (kmk) (Entered: 09/26/2001) |
| 12/21/2001 | 156 | SEALED DOCUMENT (nlt) (Entered: 12/21/2001) |
| 01/29/2002 | 157 | RULING ON RULE 35 (b) MOTION...court concluded the mtn of USA is sound and that mtn is GRANTED... ( Signed by Judge John V. Parker ) (clp) (Entered: 08/28/2002) |
| 10/28/2002 | 162 | NOTICE TO COUNSEL...a status cnf was held 10/28/02...cnsl discussed various issues with the court... ( Signed by Judge John V. Parker ) (clp) (Entered: 10/28/2002) |
| 10/13/2006 | 165 | Probation Jurisdiction Transferred to the Middle District of Alabama as to Michael Joseph Marlowe Transmitted Transfer of Jurisdiction form, with certified copies of indictment, judgment and docket sheet. (NLT, ) |

| | | (Entered: 10/13/2006) | |

**Case #: 3:99-cr-00136-JVP**

AO 245B  (8/96) Judgment in a Criminal Case

FILED
U.S. DIST. COURT
MIDDLE DIST OF LA.

# UNITED STATES DISTRICT COURT

|  |  |
|---|---|
| MIDDLE | District of     LOUISIANA |

| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
|---|---|
| V. | (For Offenses Committed On or After November 1, 1987) |
| MICHAEL JOSEPH MARLOWE, JR. | Case Number:     99-136-003-A |
|  | Robert James Hildrum, Esq. |
|  | Defendant's Attorney |

## THE DEFENDANT:

x   pleaded guilty to count(s)   I

☐   pleaded nolo contendere to count(s) _____
    which was accepted by the court.

☐   was found guilty on count(s) _____
    after a plea of not guilty.

| Title & Section | Nature of Offense | Date Concluded | Count Number(s) |
|---|---|---|---|
| 21 U.S.C. § 846 | Conspiracy to distribute controlled substance | July, 1999 | I |

A TRUE COPY
Nicole Soups  10/13/06

The defendant is sentenced as provided in pages 2 through     7     of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐   The defendant has been found not guilty on count(s) _____

x   Count(s)   7, 19, 20, 22, 28          ☐ is   x   are   dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec.     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 | April 20, 2000 |
| | Date of Imposition of Judgment |
| Defendant's Date of     January 22, 1953 | |
| Defendant's USM No.:     09021-002 | |
| | Signature of Judicial Officer |
| Defendant's Residence Address: | |
| 251 Lee Road #561 | |
| Smith, Alabama, 36877 | John V. Parker, Judge |
| | Name and Title of Judicial Officer |

DKT. & ENTERED

251 Lee Road #56

Smith, Alabama, 36877

DATE
NOTICE MAILED TO:

DATE 5/1/00  BY ____

Date

DATE: 04/28/00          DEPUTY CLERK: BW

3:99-cr-00136 117 - 1

AO 245B    (8/96)  Sheet 2—Imprisonment

DEFENDANT:       Michael J. Marlowe
CASE NUMBER:     CR 99-136-A

Judgment — Page ___2___ of __7__

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total
total term of ___70 months_____ .

x    The court makes the following recommendations to the Bureau of Prisons:
That defendant be incarcerated in a facility in close proximity to Alabama.

The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

  ☐   at _____  ☐ a.m.  ☐ p.m.   on  _____ .

  ☐   as notified by the United States Marshal.

X    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐   before 2 p.m. on  _____ .

  ☐   as notified by the United States Marshal.

  x   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____  to  _____

at  _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy U.S. Marshal

AO 245B    (8/96)  Sheet 3—Supervised Release

DEFENDANT:    Michael J. Marlowe, Jr.
CASE NUMBER:    CR 99-136-A

Judgment—Page ___3___ of ___7___

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of ___4 years___

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐   The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X   The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (8/96) Judgment in a Criminal Case
         Sheet 3 — Reverse — Supervised Release

Judgment—Page    4    of    7

DEFENDANT:        Michael J. Marlowe, Jr.
CASE NUMBER:      CR 99-136-A

## ADDITIONAL SUPERVISED RELEASE TERMS

1.  The defendant shall pay any financial penalty imposed by this judgment, and that remains unpaid at the commencement of the term of supervised release.

2  The defendant shall participate in a substance abuse treatment program which may include urine testing and residential treatment, and shall assist in the cost of said treatment, all at the direction of the probation officer.

AO 245B    (8/96) Sheet 5, Part A—Criminal Monetary Penalties

DEFENDANT:    Michael J. Marlowe, Jr.
CASE NUMBER:    CR 99-136-A

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on on Sheet 5, Part B.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **Totals:** | $ 100.00 | $ 5,000.00 | $ |

☐    If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . . . . . . . .    $ _____

## FINE

The above fine includes costs of incarceration and/or supervision in the amount of $    $ _____ .

The defendant shall pay interest on any fine more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

The court has determined that the defendant does not have the ability to pay interest and it is ordered that:

☐    The interest requirement is waived.

☐    The interest requirement is modified as follows:

## RESTITUTION

☐    The determination of restitution is deferred until _____ .  An Amended Judgment in a Criminal Case will be entered after such determination.

The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | *Total Amount of | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| **Totals:** | $ _____ | $ _____ | |

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B    (8/96) Sheet 5, Part B—Criminal Monetary Penalties

DEFENDANT:    Michael J. Marlowe, Jr.
CASE NUMBER:    CR 99-136-A

Judgment — Page ___6___ of ___7___

# SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

**A**    x    In full immediately; or

**B**    ☐    $ _____ immediately, balance due (in accordance with C, D, or E); or

**C**    ☐    not later than _____ ; or

**D**    ☐    in installments to commence _____ days after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

**E**    ☐    in _____ (*e.g., equal, weekly, monthly, quarterly*) installments of $ _____ over a period of _____ year(s) to commence _____ days after the date of this judgment.

The defendant will be credited for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

☐    The defendant shall pay the cost of prosecution.

X    The defendant shall forfeit the defendant's interest in the following property to the United States:
Any and all property constituting, or derived from, any proceeds the defendant obtained directly or indirectly as a result of the said violation, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violation alleged in the Indictment, including but not limited to $84,000.00, in that such sum, in aggregate, was derived from the above offence as gross proceeds in exchange for the distribution of controlled substances, or all interests traceable thereto in violation of Title 21 U.S.C. 846 and 853 (a).

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program, are to be made as directed by the court, the probation officer, or the United States attorney.

AO 245B    (8/96) Sheet 6—Statement of Reasons

DEFENDANT:    Michael J. Marlowe, Jr.
CASE NUMBER:    CR 99-136-A

## STATEMENT OF REASONS

x    The court adopts the factual findings and guideline application in the presentence report.

## OR

☐    The court adopts the factual finding and guideline application in the presentence report except (see attachment, if necessary):

### Guideline Range Determined by the Court:

Total Offense Level:    25

Criminal History Category:    IV

Imprisonment Range:    84    to    105    months

Supervised Release Range:    3    to    5    years

Fine Range: $    10,000.00    to $    2,000,000.00

x    Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution: $ _____

☐    Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

☐    For offenses committed on or after September 13, 1994 but before April 23, 1996 that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

☐    Partial restitution is ordered for the following reason(s):

The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reasons:

## OR

The sentence departs from the guideline range:

x    upon motion of the government, as a result of defendant's substantial assistance.

for the following specific reason(s):
Court departs downward two levels, resulting in a guideline range of 70-87 months.

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

# DOCUMENT COVER SHEET



3:99-cr-00136 1 - 1

DATE: 09/01/99                    DEPUTY CLERK: BW

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

FILED IN OPEN COURT

AUG 1 8 1999

RICHARD T. MARTIN, CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**INDICTMENT FOR CONSPIRACY TO**
**POSSESS WITH INTENT TO DISTRIBUTE AND**
**TO DISTRIBUTE CONTROLLED SUBSTANCES,**
**DISTRIBUTION OF MARIJUANA,**
**UNLAWFUL USE OF COMMUNICATIONS FACILITY,**
**INTERSTATE TRAVEL IN AID OF RACKETEERING,**
**AND FORFEITURE ALLEGATION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 99- 136 - B-M2 |
| | : | |
| versus | : | |
| | : | 21 U.S.C. § 846 |
| JOYCE TINA CHERRY | : | 21 U.S.C. § 841(a)(1) |
| CHARLES MELVIN GRIFFIN, JR. | : | 21 U.S.C. § 843(b) |
| OWEN DANIEL "DAN" FOSTER | : | 18 U.S.C. § 1952(a)(3) |
| MICHAEL JOSEPH "MICKY" MARLOWE | : | 18 U.S.C. § 2 |
| WILLIAM RANDAL "RANDY" EMERSON | : | 21 U.S.C. § 853(a) |

**THE GRAND JURY CHARGES:**

**COUNT 1 - CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCES**

**AT ALL TIMES RELEVANT TO THIS INDICTMENT:**

1.    **JOYCE TINA CHERRY,** a defendant herein, was a resident of

Spring, Texas.  Cherry rented a home at 23127 Dew Wood, Spring,

Texas, in February 1996 and remained there until she notified her

landlord on June 1, 1997, that she intended to move elsewhere.

Cherry was an associate of Charles Edwin McDonald, and, through

McDonald, was introduced to James Irvin Morden, Jr., Barbara Ann

Bishop and others who acted as couriers of drugs and money.

While residing at the home, Cherry obtained, subscribed to, and

maintained telephone number (713/281)355-5088 within the home,

which telephone was used to communicate with Charles Edwin
McDonald, James Irvin Morden, Jr., Charles Melvin Griffin, Jr.,
and others.

2.    **CHARLES MELVIN GRIFFIN, JR.**, a defendant herein, was a
resident of 406 Tate Road, Denham Springs, Louisiana.  Griffin
was the owner, operator, and sole proprietor of The Land Company,
a business purportedly engaged in the buying and selling of heavy
equipment.  Griffin was an associate of McDonald, and through
McDonald, was introduced to James Irvin Morden, Jr., Barbara Ann
Bishop, and others.  Griffin had access to many telephones, which
telephones he used to communicate with McDonald, Morden, and
others.  Also, Griffin had access to, and utilized, private
aircraft for the benefit of McDonald and his associates.

3.    **OWEN DANIEL "DAN" FOSTER**, a defendant herein, was a resident
of Tuscumbia, Alabama.  Foster used his home telephone to
communicate with Charles Edwin McDonald and others.  Foster,
through his brother, Richard "Red" Foster, was introduced to
Charles Edwin McDonald sometime in 1995.  McDonald introduced Dan
Foster to James Irvin Morden, Jr., and others.

4.    **MICHAEL JOSEPH "MICKY" MARLOWE**, a defendant herein, was a
resident of Smiths, Alabama.  Marlowe sometimes lived in a
condominium in nearby Columbus, Georgia, and was purportedly a
used car salesman in adjacent Phenix City, Alabama.  Marlowe was
an associate of Charles Edwin McDonald, through whom he met James
Irvin Morden, Jr., and others.  Marlowe maintained telephones at
both residences and his used car lot, which telephones were

2

utilized to communicate with McDonald, Morden, Foster, and others.

5.    **WILLIAM RANDAL "RANDY" EMERSON**, a defendant herein, was a resident of Bokoshe, Oklahoma.  Emerson was an associate of Charles Edwin McDonald and met Morden and others through McDonald.  Emerson received telephone calls from McDonald through a telephone at the nearby home of Emerson's parents.

6.    CHARLES EDWIN MCDONALD was a native of the Baton Rouge area. For periods between 1992 and November 1995, McDonald was imprisoned at Maxwell Air Force Base as a result of his conviction for possessing marijuana with intent to distribute. Following his release, McDonald lived at his parents' Zachary area home, and sometimes resided at a north Louisiana farm known as Melrose.  McDonald reportedly worked at his mother's local eatery (Old McDonald's Restaurant), and also claimed to be employed at TBS Construction Company.  At each of these locations, McDonald had access to and used telephones to communicate with CHERRY, GRIFFIN, MARLOWE, FOSTER, and EMERSON. Between November 1995 and May 25, 1997, McDonald and others were engaged in efforts to obtain and distribute substantial amounts of marijuana, cocaine, and methamphetamine.  On May 25, 1997, McDonald was arrested for possession of a substantial amount of marijuana.

7.    JAMES IRVIN MORDEN, JR., was a resident of Baton Rouge. Morden was a partner in, and operated from, a local automotive repair shop known as Performance Automotive Specialties.  Morden was a friend and associate of Charles Edwin McDonald, and

3

assisted McDonald in the effort to obtain and distribute substantial amounts of marijuana, cocaine, and methamphetamine. Morden subscribed to and maintained phones at his home and business.  Beginning in August 1996 and continuing through mid 1997, Morden also arranged and subscribed to cellular phone service for himself, McDonald, and three other individuals who were employed as couriers of marijuana, cocaine, methamphetamine, and monies related thereto.  The three couriers are referred to below as "Courier SB," "Courier JL," and "Courier CMR."  Courier CMR was also Morden's business partner in Performance Automotive Specialties.  There also was another transporter of money and controlled substances, who is hereafter referred to as "Courier CM, Jr."

8.    BARBARA ANN BISHOP was a resident of Baton Rouge.  Bishop was a longtime friend and associate of Charles Edwin McDonald. Bishop assisted McDonald and Morden to obtain and distribute substantial amounts of marijuana, cocaine, and methamphetamine.

**Conspiracy**

9.    Beginning on an exact date unknown to the Grand Jury, but in or about November 1995, and continuing thereafter until in or about July 1999, in the Middle District of Louisiana, the defendants herein:

JOYCE TINA CHERRY<br>
CHARLES MELVIN GRIFFIN, JR.<br>
MICHAEL JOSEPH MARLOWE<br>
OWEN DANIEL "DAN" FOSTER<br>
WILLIAM RANDAL "RANDY" EMERSON

did conspire among themselves and with others, both known and unknown to the Grand Jury, knowingly and intentionally to

4

distribute and to possess with intent to distribute controlled
substances, that is, substances containing a detectable amount of
marijuana (Schedule I), cocaine (Schedule II), and
methamphetamine (Schedule II), which is in violation of Title 21,
United States Code, Section 841(a)(1), and did aid and abet the
commission of said conspiracy.

## Object Of The Conspiracy

10.  It was the object of the conspiracy that the defendants
herein, together with others both known and unknown to the Grand
Jury, did devise, conduct, and participate in a plan to acquire,
possess, transport, and distribute in various parts of the United
States, at least five (5) kilograms of cocaine, one hundred (100)
kilograms of marijuana, and five hundred (500) grams of
methamphetamine.

## Manner And Means Of Accomplishing The Conspiracy

11.  It was a part of the conspiracy that CHERRY would lease a
rental home to serve as her personal residence and as a site
where CHERRY and her coconspirators could store, conceal,
package, and distribute amounts of marijuana, cocaine, and
methamphetamine, and monies related thereto, and to provide
lodging to couriers and coconspirators.

12.  It was further a part of the conspiracy that CHERRY, without
the knowledge or consent of her landlord, would obtain and pay
for the installation of various security devices for the home,
including an alarm system, changing the existing locks and
installing additional locks, and installing exterior doors to the
existing garage/carport.

13.  It was further a part of the conspiracy that the defendants
would make use of certain "pretense" or "front" businesses to
disguise, cover up, and account for their activities in
furtherance of the conspiracy.

14.  It was further a part of the conspiracy that the defendants
would obtain and subscribe to telephones, both in their own names
and in the names of the front businesses, and would use these
telephones to negotiate, arrange, organize, facilitate, and
conduct the purchase, sale and transportation of controlled
substances.

15.  It was further a part of the conspiracy that the defendants
would make use of the services of other individuals to serve as
couriers or transporters of the controlled substances between
Texas, Baton Rouge, and other locations.

16.  It was further a part of the conspiracy that GRIFFIN would
arrange and pay for the use of both charter and commercial
aircraft to transport sources of controlled substances, drug
couriers, and amounts of monies used in connection with the
distribution of controlled substances.

17.  It was further a part of the conspiracy that the
conspirators would obtain, and cause others to obtain, assorted
vehicles to be used by the couriers in the transportation and
distribution of controlled substances.

18.  It was further a part of the conspiracy that the
conspirators would cause changes to be made to the design and
construction of some of the vehicles to be used by the couriers
by constructing secret compartments within the vehicles wherein

6

the defendants and their coconspirators and confederates could conceal the controlled substances they were transporting, or monies relating to the distribution thereof.

19.  It was further a part of the conspiracy that the conspirators would rent, or cause others to rent, hotel rooms to house the couriers while they were waiting to transport and deliver the controlled substances being distributed pursuant to the conspiracy.

20.  It was further a part of the conspiracy that storage facilities were leased by, or at the direction of, the defendants, which storage facilities were used to secretly store and load amounts of controlled substances which they were distributing, or possessing with intent to distribute.

21.  It was further a part of the conspiracy that in order to account for and maintain records of the distribution of the controlled substances and the amounts of money paid, or owed, thereon, GRIFFIN did maintain and manage records pertaining to the amount of controlled substances possessed or distributed, and the amount paid, received or owed in connection therewith.

**Acts In Furtherance Of The Conspiracy**

22.  In furtherance of the conspiracy and to accomplish its purposes, the defendants herein did commit, and did cause to be committed, acts in the Middle District of Louisiana and elsewhere, which include the following:

      a.  On or about February 15, 1996, CHERRY leased the home at 23127 Dew Wood, Spring, Texas, which home was used as a site for the storage, exchange, concealment, and

7

distribution of marijuana, cocaine, methamphetamine, and monies related thereto.

b.  On or about February 20, 1996, CHERRY installed a security system within the rented residence, without the consent of her landlord and contrary to the terms of her lease, which security system was used to protect and conceal her distribution of controlled substances to others, ultimately including FOSTER and MARLOWE.

c.  On March 6, 1996, Courier JL traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Courier JL traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

d.  On March 15 and 16, 1996, Courier SB traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home.  Courier SB traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

e.  On April 9, 1996, Morden  traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Morden traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

f.  On or about April 25, 1996, the defendants herein induced, caused and benefitted from Morden's purchase of 1000 polyethylene bags, which bags were intended and used for the packaging, shipping, and distribution of

8

controlled substances to others, ultimately including FOSTER and MARLOWE.

g.  On April 26, 1996, Courier SB traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Courier SB traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

h.  On May 5, 1996, Courier SB traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Courier SB traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

i.  On May 13, 1996, Courier SB traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Courier SB traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

j.  On June 9, 1996, Courier SB traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Courier SB traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

k.  On or about June 10, 1996, the defendants herein induced, caused, and benefitted from, the acquisition of a commercial quality vacuum seal machine, which machine was employed to efficiently package controlled substances for easy concealment, transportation, and

9

distribution to others, ultimately including FOSTER and MARLOWE.

1.   On or about June 10, 1996, the defendants herein induced, caused, and benefitted from, Courier SB's lease of a mini-storage building near CHERRY's home, which building was used to facilitate the interstate transportation and distribution of controlled substances to others, ultimately including FOSTER and MARLOWE.

m.   On or about June 10, 1996, the defendants herein induced, caused, and benefitted from, the purchase of a 1992 Ford F-350 pick-up truck, which truck was modified to include a secret compartment that was used to transport controlled substances from CHERRY to others, ultimately including FOSTER and MARLOWE.

n.   On June 26, 1996 at 2232 hours, the Houston area mini-storage facility rented by Courier SB was entered.

o.   On June 27, 1996, Courier SB traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Courier SB traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

p.   At 0117 hours on June 27, 1996, the Houston area mini-storage facility rented by Courier SB was entered. Later on the same date, the facility was again entered at 1027 hours and exited at 1146 hours.

10

q.   On July 3, 1996, Courier JL traveled to Houston and
     rented a room at the LaQuinta Inn near CHERRY's home.
     Courier JL traveled to Houston for the purpose of
     obtaining, and did obtain, controlled substances from
     CHERRY.

r.   At 0928 hours on July 4, 1996, the mini-storage rented
     by Courier SB was entered.  It was exited at 0934.
     Later on the same date, the facility was entered at
     1132 and exited at 1155.

s.   On July 13, 1996, the mini-storage facility rented by
     Courier SB was entered.  It was entered at 2006 hours
     and exited at 2030 hours.

t.   On July 14, 1996, Courier SB traveled to Houston and
     rented a room at the LaQuinta Inn near CHERRY's home.
     Courier SB traveled to Houston for the purpose of
     obtaining, and did obtain, controlled substances from
     CHERRY.

u.   On July 14, 1996, at 1959 hours, the storage site
     rented by Courier SB was entered.  It was exited at
     2051 hours.

v.   On July 19, 1996, Courier SB traveled to Houston and
     rented a room at the LaQuinta Inn near CHERRY's home.
     Courier SB traveled to Houston for the purpose of
     obtaining, and did obtain, controlled substances from
     CHERRY.

w.   On July 22, 1996, Courier JL traveled to Houston and
     rented a room at the LaQuinta Inn near CHERRY's home.

11

Courier JL traveled to Houston for the purpose of
obtaining, and did obtain, controlled substances from
CHERRY.

x.  On July 26 and 27, 1996, Courier JL traveled to Houston
and rented a room at the LaQuinta Inn near CHERRY's
home.  Courier JL traveled to Houston for the purpose
of obtaining, and did obtain, controlled substances
from CHERRY.  Simultaneously, Courier SB also rented a
room at the LaQuinta Inn on July 27, 1996.

y.  On July 27, 1996, the storage site rented by Courier SB
was entered at 1236 hours.  It was exited at 1340
hours.

z.  On or about August 1, 1996, GRIFFIN arranged for the
lease of a warehouse in Baytown, Texas, which warehouse
was intended for use as a sanctuary in the plan to
transport controlled substances between CHERRY's home,
Louisiana, and elsewhere.

aa.  On the days of August 5 and 6, 1996, Courier SB
traveled to Houston and rented a room at the LaQuinta
Inn near CHERRY's home.  Courier SB traveled to Houston
for the purpose of obtaining, and did obtain,
controlled substances from CHERRY.

bb.  On or about August 8, 1996, GRIFFIN and Courier JL flew
via private charter aircraft, arranged and paid for by
GRIFFIN, to West Memphis, Arkansas, for the purpose of
obtaining money intended for the purchase of controlled
substances.

12

cc.  On August 17, 1996, Morden traveled to Houston and
     rented a room at the LaQuinta Inn near CHERRY's home.
     Morden traveled to Houston for the purpose of
     obtaining, and did obtain, controlled substances from
     CHERRY.

dd.  On or about August 18, 1996, GRIFFIN arranged for
     Morden to fly via private charter aircraft to Muscle
     Shoals, Alabama for the purpose of obtaining money from
     FOSTER, which funds were intended for the purchase of
     controlled substances.

ee.  On August 18, 1996, Courier JL traveled to Houston and
     rented a room at the LaQuinta Inn near CHERRY's home.
     Courier JL traveled to Houston for the purpose of
     obtaining, and did obtain, controlled substances from
     CHERRY.

ff.  On or about August 27, 1996, EMERSON met Courier JL in
     Gilroy, California, where EMERSON furnished
     approximately one pound of methamphetamine to Courier
     JL in exchange for a substantial sum of money.

gg.  On or about September 3, 1996, GRIFFIN, using the name
     of "The Land Company," purchased a portable, digital
     scale. Said scale was in fact used for the weighing and
     distribution of cocaine.

hh.  On September 12, 1996, Courier SB traveled to Houston
     and rented a room at the LaQuinta Inn near CHERRY's
     home.  Courier SB traveled to Houston for the purpose

13

of obtaining, and did obtain, controlled substances from CHERRY.

ii. On or about September 14, 1996, EMERSON met Courier JL in California and supplied approximately three pounds of methamphetamine in exchange for a substantial sum of money.

jj. On September 28, 1996, Courier JL traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Courier JL traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

kk. On October 14, 1996, Morden traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Morden traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

ll. On or about October 29, 1996, EMERSON met Couriers JL and SB in California and supplied approximately six pounds of methamphetamine in exchange for a substantial sum of money.

mm. On November 6, 1996, Courier JL traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Courier JL traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

nn. On or about November 19, 1996, EMERSON met Couriers JL and Barbara Ann Bishop in California and supplied

14

approximately three pounds of methamphetamine in exchange for a substantial sum of money.

oo. On or about November 24, 1996, EMERSON met Couriers JL and Barbara Ann Bishop in California and supplied approximately five pounds of methamphetamine in exchange for a substantial sum of money.

pp. On December 14, 1996, Courier JL traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Courier JL traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

qq. On December 21 and 22, 1996, Courier JL traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Courier JL traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

rr. On January 7 and 8, 1997, Morden traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Morden traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

ss. On January 15 and 16, 1997, Morden traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Morden traveled to Houston for the purpose of obtaining controlled substances from CHERRY.

tt. On January 17, 1997, GRIFFIN arranged for Courier SB to fly via private aircraft to a small airport near the

15

home of CHERRY. Courier SB took the place of Morden, who was already in Houston, but had to return to Baton Rouge because of a family emergency.

uu. On January 17, 1997, Courier SB rented a room at the LaQuinta Inn near CHERRY's home. Courier SB traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

vv. Sometime on or about January 17, 1997, Courier SB met with CHERRY, obtained a substantial amount of cocaine, and then transported the cocaine to Baton Rouge using a truck belonging to Morden.

ww. On February 17, 1997, GRIFFIN and Morden flew via private charter aircraft to Muscle Shoals, Alabama, in order to meet FOSTER and obtain a substantial amount of money intended for the purchase of controlled substances. The trip was arranged by and charged to GRIFFIN.

xx. On or about February 23, 1997, Courier JL traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Courier JL traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

yy. On or about February 24, 1997, Courier JL traveled to Phenix City, Alabama, for the purpose of exchanging money and controlled substances with MARLOWE.

zz. On February 25, 1997, Courier SB traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's

16

home.  Courier SB traveled to Houston for the purpose
of obtaining, and did obtain, controlled substances
from CHERRY.

aaa. On February 28, 1997, GRIFFIN arranged for Courier CMR
to transport approximately $40,000 to California.  The
funds were eventually furnished to EMERSON for the
purpose of acquiring methamphetamine.

bbb. On or about March 1, 1997, EMERSON met Courier JL in
California and supplied approximately five pounds of
methamphetamine in exchange for the $40,000 transported
to California by Courier CMR.

ccc. On March 17, 1997, GRIFFIN chartered a private
aircraft, sent it to the area of Midland, Texas, and
paid for its expenses.  Morden accompanied the pilot to
Texas and picked up a West Texas source of marijuana
supply.  The marijuana source was then transported to
Baton Rouge in order to visit with McDonald and others
about proposed marijuana transactions.

ddd. On March 20, 1997, GRIFFIN arranged and paid for the
return travel to Texas, via commercial airline, of the
West Texas marijuana source of supply.

eee. On April 10 and 11, 1997, Morden traveled to Houston
and rented a room at the LaQuinta Inn near CHERRY's
home.  Morden traveled to Houston for the purpose of
obtaining, and did obtain, controlled substances from
CHERRY.

17

fff. On April 15, 1997, Morden traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Morden traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

ggg. On April 19, 1997, Morden traveled to Houston and rented a room at the LaQuinta Inn near CHERRY's home. Morden traveled to Houston for the purpose of obtaining, and did obtain, controlled substances from CHERRY.

hhh. On May 5, 1997, GRIFFIN arranged and used a charter aircraft to fly to the area of Midland, Texas. GRIFFIN transported approximately $30,000 which was intended for the purchase of 100 pounds of marijuana from the West Texas source of marijuana.

iii. On May 23, 1997, GRIFFIN arranged and paid for the flight of Morden to the area of Midland, Texas. Morden traveled for the purpose of acquiring approximately one hundred pounds of marijuana from the West Texas source of marijuana.

jjj. On or about May 24, 1997, Morden actually obtained approximately fifty pounds of marijuana, some of which was delivered to Charles Edwin McDonald on May 25, 1997.

kkk. On the afternoon of May 25, 1997, McDonald was arrested by law enforcement authorities for possession of marijuana with intent to distribute.

18

lll. On May 30, 1997, five days after McDonald's arrest,
CHERRY's associate and supposed employer rented a mini-
storage facility, to which CHERRY was granted access.

mmm. On June 1, 1997, six days after McDonald's arrest,
CHERRY notified her landlord she was moving from the
home located at 23127 Dew Wood.  CHERRY informed her
landlord that she had a job in another part of Houston.

nnn. Beginning in August 1996 and continuing through June
1997, MARLOWE was supervised by the United States
Probation Office for the Middle District of Georgia.
During such period, MARLOWE was required to submit
monthly reports which detailed his contacts with other
persons who had criminal records.  MARLOWE's monthly
reports conceal his frequent and numerous telephone
contacts with Charles Edwin McDonald, a thrice
convicted Federal drug offender.

ooo. In or about March 1999, CHERRY contacted Courier CM,
Jr., at his Baton Rouge area home.  CHERRY proposed to
"front" a substantial amount of marijuana to Courier
CM, Jr.  Courier CM, Jr., agreed to meet with CHERRY to
discuss the proposal.

ppp. Shortly after her March 1999 telephone call to Courier
CM, Jr., CHERRY traveled to Livonia, Louisiana, where
she met Courier CM, Jr.  During the meeting, CHERRY
discussed the details of her proposal, including the
amount of marijuana to be fronted, the various prices

19

dependent on place of delivery, and the means for actually executing an exchange of money and marijuana.

qqq. On June 29, 1999, CHERRY used a telephone to speak with Courier CM, Jr., and arrange a marijuana transaction in Lafayette Parish on or about July 9, 1999.

rrr. On July 8, 1999, CHERRY did in fact meet Courier CM, Jr., in Lafayette, Louisiana, and delivered approximately twenty (20) pounds of marijuana to him.

sss. On or about July 19, 1999, CHERRY agreed to meet Courier CM, Jr., in Houston for the purpose of exchanging money and distributing marijuana and cocaine.

ttt. On or about July 21, 1999, Courier CM, Jr., traveled from Baton Rouge to Houston for the purpose of obtaining controlled substances from CHERRY. Courier CM, Jr., met CHERRY, who possessed approximately twenty pounds of marijuana, which she intended to deliver, and did deliver, to Courier CM, Jr.

uuu. Counts Three through Twenty-Four of this indictment (Unlawful Use Of Telephones) are incorporated herein as overt acts in furtherance of the conspiracy.

vvv. Counts Twenty-Five through Thirty-Five of this indictment (Unlawful Travel In Aid Of A Racketeering Enterprise) are incorporated herein as overt acts in furtherance of the conspiracy.

The above is a violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 2.

20



## COUNT TWO - DISTRIBUTION OF MARIJUANA

On or about July 8, 1999, in the Middle District of Louisiana and elsewhere, **JOYCE TINA CHERRY** and others both known and unknown to the Grand Jury, knowingly and intentionally did possess with intent to distribute and did distribute a substance containing a detectable amount of marijuana, a Schedule I controlled substance, and did aid, abet, and cause others to do so.

The above is a violation of Title 21, <u>United States Code</u>, Section 841(a)(1), and Title 18, <u>United States Code</u>, Section 2.

## COUNTS THREE THROUGH TWENTY-FOUR - UNLAWFUL USE OF TELEPHONES

On or about the dates listed below, in the Middle District of Louisiana and elsewhere, the following defendants knowingly and intentionally used a communications facility, a telephone, in committing and in causing and facilitating the commission of a felony, that is, a conspiracy to distribute controlled substances, and distribution of controlled substances, as alleged in Counts One and Two of this indictment, which are violations of Title 21, <u>United States Code</u>, Sections 846 and 841(a)(1):

| CT. | DATE | TIME & LENGTH OF CALL | DEFEN-DANTS | DESCRIPTION OF CALL |
|-----|------|------------------------|-------------|----------------------|
| 3 | August 3, 1996 | 0754 (2 minutes) | CHERRY | Courier JL's cellular phone calls CHERRY home |
| 4 | August 4, 1996 | 1414 (5 minutes) | CHERRY | CHERRY calls home of Courier SB |
| 5 | August 22, 1996 | 2113 (5 minutes) | CHERRY | CHERRY calls home of Courier SB |

21

| CT. | DATE | TIME & LENGTH OF CALL | DEFEN-DANTS | DESCRIPTION OF CALL |
|---|---|---|---|---|
| 6 | September 12, 1996 | 0921 (4 minutes) | CHERRY | Courier SB's cellular phone calls CHERRY home |
| 7 | November 1, 1996 | 1348 (1 minute) | MARLOWE | MARLOWE calls Morden at Performance Automotive Specialties |
| 8 | December 10, 1996 | 2000 (19 minutes) | FOSTER | FOSTER calls Morden home |
| 9 | December 20, 1996 | 1035 (3 minutes) | CHERRY | CHERRY home calls Performance Automotive Specialties |
| 10 | December 22, 1996 | 1659 (½ minute) | CHERRY & GRIFFIN | GRIFFIN calls CHERRY home |
| 11 | January 19, 1997 | 1516 (7 minutes) | CHERRY | CHERRY calls home of Courier SB |
| 12 | January 23, 1997 | 0847 (8 minutes) | CHERRY | CHERRY calls home of Courier SB |
| 13 | February 14, 1997 | 2126 (3 minutes) | CHERRY | CHERRY calls McDonald cellular phone |
| 14 | March 19, 1997 | 1856 (1 minute 56 seconds) | GRIFFIN | GRIFFIN calls Morden home |
| 15 | April 7, 1997 | 2042 (4 minutes) | FOSTER | FOSTER calls Morden home |
| 16 | May 13, 1997 | 2206 (2 minutes) | CHERRY | CHERRY calls McDonald at Melrose |
| 17 | May 14, 1997 | 2059 (2 minutes) | CHERRY | CHERRY calls McDonald at Melrose |
| 18 | May 22, 1997 | 0911 (2 minutes) | CHERRY | Morden calls CHERRY home |
| 19 | May 23, 1997 | 1218 (1 minute) | MARLOWE | MARLOWE calls Morden at Performance Automotive Specialties |
| 20 | May 23, 1997 | 1517 (1 minute) | MARLOWE | MARLOWE calls Morden at Performance Automotive Specialties |
| 21 | May 25, 1997 | 1104 (1 minute) | GRIFFIN | GRIFFIN calls Morden home |

22

| CT. | DATE | TIME & LENGTH OF CALL | DEFEN-DANTS | DESCRIPTION OF CALL |
|---|---|---|---|---|
| 22 | May 30, 1997 | 2042 (2 minutes) | FOSTER & MARLOWE | FOSTER calls MARLOWE condo |
| 23 | June 29, 1999 | 1905 (5 minutes) | CHERRY | CHERRY calls Courier CM, Jr. |
| 24 | July 6, 1999 | 1900 (2 minutes) | CHERRY | CHERRY calls Courier CM, Jr. |

Each of the above is a violation of Title 21, United States Code, Section 843(b).

## COUNTS TWENTY-FIVE THROUGH THIRTY-FIVE

## INTERSTATE TRAVEL IN AID OF RACKETEERING

On or about the dates listed below, in the Middle District of Louisiana and elsewhere, the following defendants did travel, and cause others to travel, in interstate commerce, with intent to promote, manage, establish, carry on, and facilitate unlawful activity, that is, a business enterprise involving the distribution of controlled substances, and conspiracy to do so, violations of Title 21, United States Code, Sections 841 and 846, and thereafter the defendants did perform, and attempt to perform, acts to obtain, transport and distribute controlled substances in the State of Louisiana and elsewhere:

| CT. | DATE OF TRAVEL | DEFENDANTS | DESCRIPTION OF TRAVEL |
|---|---|---|---|
| 25 | October 29, 1996 | EMERSON | EMERSON caused Couriers JL & SB to travel to California to acquire methamphetamine |

23

| CT. | DATE OF TRAVEL | DEFENDANTS | DESCRIPTION OF TRAVEL |
|-----|----------------|------------|------------------------|
| 26 | January 17, 1997 | GRIFFIN & CHERRY | GRIFFIN chartered aircraft to fly Courier SB to Houston to meet CHERRY; and pick-up Morden for return to Baton Rouge |
| 27 | February 17, 1997 | GRIFFIN & FOSTER | GRIFFIN chartered aircraft to fly Morden from Baton Rouge to Muscle Shoals, Alabama to meet FOSTER |
| 28 | February 24, 1997 | MARLOWE | MARLOWE caused Courier JL to travel to Phenix City, Alabama |
| 29 | February 28, 1997 | GRIFFIN & EMERSON | GRIFFIN arranged and paid for commercial flight of Courier CMR, who carried money from Baton Rouge to Oakland, California, for delivery to EMERSON |
| 30 | March 1, 1997 | EMERSON | EMERSON caused Courier JL to travel to California to acquire methamphetamine |
| 31 | March 17, 1997 | GRIFFIN | GRIFFIN chartered aircraft to fly marijuana source from West Texas to Baton Rouge |
| 32 | May 5, 1997 | GRIFFIN | GRIFFIN chartered aircraft to fly from Baton Rouge to West Texas to meet Courier CM, Jr. and marijuana source |
| 33 | May 23, 1997 | GRIFFIN | GRIFFIN arranged and paid for commercial flight of Morden from Louisiana to Midland, Texas |
| 34 | July 6, 1999 | CHERRY | CHERRY traveled to Louisiana for the purpose of delivering marijuana to Courier CM, Jr., who had traveled from Baton Rouge to Lafayette |
| 35 | July 21, 1999 | CHERRY | CHERRY caused Courier CM, Jr. to travel from Baton Rouge to Houston for the purpose of distributing marijuana |

Each of the above is a violation of Title 18, United States Code, Section 1952(a)(3), and Title 18, United States Code, Section 2.

24

## FORFEITURE ALLEGATION

1.    The allegations of Counts One through Twenty-Four of this indictment are re-alleged and incorporated by reference as though set forth fully herein for the purposes of alleging forfeiture to the United States of America, pursuant to the provisions of Title 21, United States Code, Section 853.

2.    As a result of the foregoing offenses, that is, conspiracy to distribute controlled substances, distribution of marijuana, and unlawful use of communications devices, the defendants herein shall forfeit to the United States any and all property constituting, or derived from, any proceeds the defendants obtained directly or indirectly as a result of the said violations, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in this Indictment, including but not limited to the following:

### PROCEEDS

at least $1,000,000 in United States currency, in that such sum in aggregate was derived from the above offenses, and was received as gross proceeds in exchange for the distribution of controlled substances, or all interests traceable thereto.

3.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants --

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred or sold to, or deposited with, a third person;

25

(3)    has been placed beyond the jurisdiction of the Court;

(4)    has been substantially diminished in value; or

(5)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

The above is a violation of Title 21, United States Code, Sections 841(a)(1) and 853(a).

UNITED STATES OF AMERICA, by                    A TRUE BILL

L. J. Hymel                                     Grand Jury Foreperson
United States Attorney
Middle District of Louisiana

René Salomon                                    August 18, 1999
René Salomon                                    Date
Assistant United States Attorney

A TRUE COPY

Nicole' Saups    10/13/06
Deputy Clerk                Date
U.S. District Court
Middle District of Louisiana
Baton Rouge, Louisiana

26